## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 15 2017, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric Horton, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 15, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1702-CR-291 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Lisa F. Borges, Judge <br><br> Trial Court Cause No. <br> 49G04-1512-MR-42709 |

**Baker, Judge.**

Eric Horton appeals the sentence imposed by the trial court after Horton was convicted of two counts of murder. Horton argues that the sentence is inappropriate in light of the nature of the offenses and his character. Finding that the sentence is not inappropriate, we affirm.

## Facts

On November 28, 2015, Horton was at a duplex belonging to his father, Kenneth Horton. In the weeks leading up to November 28, the property manager had made attempts with law enforcement to remove Horton from the property; Horton had never formally leased a room and had threatened another tenant with a firearm. Horton always carried two firearms and routinely cleaned them and played with them like toys. Tomika Mack and Charles Turner, other residents of the duplex, were instructed to call police and/or notify the property manager if Horton returned to the property.

On November 28, 2015, Horton was at the duplex with many other people, including Mack, Turner, and India Barnes. Throughout the day, Horton and others were smoking marijuana and using cocaine. Horton displayed multiple instances of erratic behavior, including:

- Kenneth was cutting Turner's hair and Horton came into the room, brandished his firearm behind Turner's head, and stated, "I'm a killer." Tr. Vol. II p. 43.
- Horton stole the battery out of Mack's phone. Kenneth told Horton to return the battery, but Horton had already given it to another person earlier in the day who had left because Horton's increasingly angry demeanor made her feel uncomfortable.

- Horton entered Kenneth's room and threatened to tie up Kenneth's girlfriend and, if she resisted, he would kill her.

Shortly after Kenneth and his girlfriend fell asleep, they were awakened by numerous gunshots from two firearms. After the shots stopped Kenneth heard Horton say, "Dad it's done." Tr. Vol. III p. 94. When Kenneth went downstairs to see what had happened, he saw Mack on the floor in a pool of blood. Kenneth immediately called 911 before he noticed a second body, Barnes, also on the floor in a pool of blood. Barnes was killed by a single bullet to the head. Mack was shot seventeen times, with a combination of bullets from two firearms.

[4]     Horton called a friend to pick him up, and when the friend arrived, Horton was laughing and told her to drive. Tr. Vol. II p. 112. Horton then called Kenneth, telling him to wipe the front door handle to remove any fingerprints. Horton also called Kenneth's girlfriend and when she told Horton there was a dead body, he responded, "One body? Hell, I left two." Tr. Vol. III p. 42-43. During the car ride, the driver heard Horton saying, "We killed them didn't we" and "[t]hem bitches dropped like a sack of potatoes." Tr. Vol. II p. 113.

[5]     The next day, Horton called Kenneth's girlfriend and asked her to put his clothes in Kenneth's vehicle; she refused. That same day, Kenneth was interviewed by a detective, and called Horton from his cell phone at the detective's request. Horton answered the phone and when he realized it was a detective and not his father, he gave a false name and false address. Three days later, Horton's friend drove him to Champaign, Illinois. While there, Horton

bought three bus tickets, one to Texas and two to Arizona. With the assistance of police in Illinois, Horton was apprehended before he boarded a bus.

[6] On December 2, 2015, the State charged Horton with two counts of murder. Horton's three-day jury trial began on December 19, 2016; at the conclusion of the trial, the jury found Horton guilty as charged. On January 20, 2017, the trial court sentenced Horton to two consecutive sixty-year terms. Horton now appeals.

## Discussion and Decision

[7] Horton's sole argument on appeal is that the sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[8] Horton was convicted of two counts of murder. For each conviction, he faced a term of forty-five to sixty-five years, with an advisory term of fifty-five years

imprisonment. Ind. Code § 35-50-2-3(a).[1] The trial court imposed two consecutive terms of sixty years imprisonment.

[9] As for the nature of the offenses, Horton murdered two young women in cold blood, bragged about the killings, attempted to cover up his crimes, and fled the state. Mack was shot seventeen times, and her body was found with two types of bullets from the same two types of guns Horton was known to carry before the murders. The offenses were not a product of circumstances; instead, Horton's actions were calculated and callous, showing a complete disregard for human life. His lack of remorse and indifference for the victims are demonstrated by his comments after the crimes: "One body? Hell, I left two" and "[t]hem bitches dropped like a sack of potatoes." Tr. Vol. III p. 42-43, Tr. Vol. II p. 113. After the murders, Horton fled the scene; asked his father to wipe fingerprints off a door and his father's girlfriend to remove Horton's clothes from the scene; provided a false name and address to police; bought bus tickets to two different states; and directed the individual driving him to remove her phone battery so that her location could not be traced and to prevent her from calling the police. We do not find that the nature of the offenses aids Horton's inappropriateness argument.

[10] As for Horton's character, he was convicted of armed robbery in 2012 in Mississippi and was on probation for that crime at the time he committed the

---

[1] Additionally, while a capital enhancement was not sought in this case, Horton's crimes would have justified the imposition of life in prison without the possibility of parole or the death penalty. I.C. § 35-50-2-9(b).

murders. He also has prior charges for domestic assault and carrying a deadly weapon. In other words, at the young age of twenty-three, Horton already has a significant and violent criminal history, showing no signs of reforming his behavior. Horton directs our attention to evidence in the record that he suffers from mental illness, but we do not find this evidence compelling, as there is nothing tending to suggest that his mental illness played a role in these murders. The murders appear to have been coldly calculated, and his behavior after the crimes certainly demonstrates that he was capable of taking strategic, controlled steps to cover up his crimes and flee from law enforcement.

[11] As with the nature of the offenses, our analysis of Horton's character does not aid his appropriateness argument. The offenses were heinous, his behavior following the offenses was cold and calculated, and he already has a violent criminal history at a relatively young age. He shows no sign of a desire to conform his behavior to the rule of law or to show due regard for the lives and well-being of his fellow citizens. We do not find the sentence inappropriate in light of the nature of the offenses and Horton's character.

[12] The judgment of the trial court is affirmed.

Barnes, J., and Crone, J., concur.